# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### December 6, 2004 Session

## MONICA MCPEEK, ET AL. v. MELINDA S. LOCKHART

**Appeal from the Law Court for Sullivan County**
No. C34130(L)     Richard E. Ladd, Judge

**Filed March 24, 2005**

**No. E2004-01034-COA-R3-CV**

Monica McPeek and Melinda S. Lockhart ("Defendant") were involved in an automobile accident. Monica McPeek and her husband, Eldridge McPeek, ("Plaintiffs" or "Ms. McPeek" and "Mr. McPeek" respectively) sued Defendant. The case was tried and the jury found Ms. McPeek to be 40% at fault for the accident and Defendant 60% at fault and awarded Ms. McPeek damages of $4,000 and Mr. McPeek zero damages. Plaintiffs appeal claiming the Trial Court erred in refusing to grant an additur or a new trial after the jury refused to award loss of consortium damages to Mr. McPeek and that the Trial Court erred by allowing the introduction of certain of Ms. McPeek's medical records. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Law Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and SHARON G. LEE, J.J., joined.

Thomas C. Jessee, Johnson City, Tennessee, and Thomas Dossett, Kingsport, Tennessee, for the Appellants, Monica McPeek and Eldridge McPeek.

Leslie T. Ridings, Kingsport, Tennessee, for the Appellee, Melinda S. Lockhart.

# OPINION

## Background

The issues involved in this appeal pertain only to the jury's failure to award loss of consortium damages to Mr. McPeek, and the admission of certain of Ms. McPeek's medical records. We, therefore, will confine our discussion to those facts directly relevant to these issues on appeal.

At trial, Mr. McPeek testified regarding his loss of consortium claim. Mr. McPeek testified he has a prosthetic leg and has "developed sugar" and told about how things have changed since the accident. He stated that prior to the accident:

> She did everything for me. She, like I say, she cooked two - - at least two full course meals a day. I have sugar, and in between those I have to have so much snacks ever so often, and she fixed me those. She fixed my bath water, she got my towels and everything, and she helped me to the bathroom, and a lot of times I used her for a crutch. I got her at the nape of the neck, and after the accident, I couldn't get her at the nape of the neck.

Mr. McPeek explained that prior to the accident, he either would stay with his mother, or his daughter or son would stay with him to assist him with his daily activities when his wife was working. Mr. McPeek admitted that his wife still is able to help him with his medications, help him when he tests himself, and still is able to cook supper for both of them from time to time.

Mr. McPeek testified that before the accident, he and his wife had sex two or three times a week, but stated that since the accident "I can't remember when was the last time [we had sexual relations]." When asked why the situation changed, Mr. McPeek stated: "Well, she hurts all the time - - about all the time. And I hurt, and, you know, I've developed sugar, but that really doesn't have anything to do with it. I mean, it's …." Mr. McPeek did not dispute that his wife went to Dr. McCoy, asked Dr. McCoy for something for Mr. McPeek's erectile dysfunction, and was given Viagra. In fact, he admits he has a prescription for Viagra, but claims he does not need it. When Mr. McPeek was asked if his wife was telling Dr. McCoy the truth when she said Mr. McPeek had erectile dysfunction, he replied "I don't believe that she brought it up. He had some samples in there that he gave me once before, and I hadn't used them. Then he wrote the prescriptions - - he just went ahead and wrote a script for it, and it's out there in the vehicle." Mr. McPeek stated: "I don't have any problems."

Ms. McPeek also testified regarding what she did for her husband before the accident. She stated "if he goes up an incline, or down a hill or anything, he holds me around the neck to keep him from falling, because his leg don't bend like a normal leg. So he - - he kind of uses me like a crutch." She also testified that before the accident, "I helped him out of the tub. El will try to help me, you know, support his self with his arms and stuff, but once he gets up, he hops and - - to the bedroom, and he will hold me around the neck and hop, you know, on one leg till he gets in there

till I can help him put his leg on." She testified that now her husband can't use her "like a crutch" and says he has been crawling to keep from hurting her.

Ms. McPeek testified that the accident has affected their marital relationship:

in a lot of different ways. We've - - you know, I've been in pain and I can't - - I used to cook, you know, meals - - breakfast, gravy and biscuits, and things like that. And now I don't cook as much, because I don't feel like standing and lifting heavy pots and stuff, and - - you know, for long periods of time. So I fix, you know, things that are quick, easy, and he just don't - - he's got sugar so he's - - I'm not fixing the big meals and things like I used to try to fix.

When asked if she helps her husband in and out of the bathtub and does other things like she used to, Ms. McPeek replied:

No, I don't. He wouldn't let me, if I - - even if I would, but I don't do it, because when I do, then I hurt, and suffer, and have to lay on heating pads and stuff. So now I've been bringing the leg in there in the bathroom to him, and trying to do things like that to ….

Mr. McPeek also was asked about medications his wife was taking prior to the accident. He testified that his wife was not taking medications on a regular basis and stated: "The only time she took medication was when she had kidney stones, the tumor that - - she had the tumor removed. Then after she had the tumor removed, she had two more tumors develop, and that's …." Mr. McPeek also testified that prior to the accident, his wife did not take Percocet and Lortab on a regular basis.

At trial, Defendant had a paralegal read into the record a summary of the prescription records from five different pharmacies showing the prescriptions filled for Ms. McPeek during the year before the accident. Ms. McPeek's physician testified during his cross-examination that certain specific medications, including Percocet and Lortab, are for pain. These specific pain medications were listed in the summary of Ms. McPeek's prescription records read to the jury. Plaintiffs objected under Rule 403 that these records were irrelevant and that the probative value, if any, was outweighed by the unfair prejudice and confusion of the issues. The Trial Court overruled the objection.

Later during the trial, Defendant read portions of the records of several of Ms. McPeek's medical providers into the record, and Plaintiffs specifically stated they had no objections to each of these records. Plaintiffs also read certain other portions of those same medical provider records into the record.

## Discussion

Although not stated exactly as such, Plaintiffs raise two issues on appeal: 1) whether the Trial Court erred in refusing to grant an additur or a new trial after the jury awarded damages to Ms. McPeek but refused to award loss of consortium damages to Mr. McPeek; and, 2) whether the Trial Court erred by allowing the introduction of the medical and pharmacy records.

"Findings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict." Tenn. R. App. P. 13(d). As our Supreme Court has explained:

> It is the time honored rule in this State that in reviewing a judgment based upon a jury verdict the appellate courts are not at liberty to weigh the evidence or to decide where the preponderance lies, but are limited to determining whether there is material evidence to support the verdict; and in determining whether there is material evidence to support the verdict, the appellate court is required to take the strongest legitimate view of all the evidence in favor of the verdict, to assume the truth of all that tends to support it, allowing all reasonable inferences to sustain the verdict, and to discard all to the contrary. Having thus examined the record, if there be any material evidence to support the verdict, it must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury.

*Crabtree Masonry Co., Inc. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978).

Plaintiffs argue on appeal that the verdict is inadequate because the jury failed to award loss of consortium damages to Mr. McPeek and, in the alternative, that the Trial Court erred in refusing to grant a new trial because "the jury rendered an inconsistent verdict by awarding damages to the plaintiff, Monica McPeek and failing to award loss of consortium damages to Eldridge McPeek."

Tenn. Code Ann. § 25-1-106 provides for a right of recovery of loss of consortium for a person whose spouse is injured. Tenn. Code Ann. § 25-1-106 (2000). While a loss of consortium claim is a derivative claim, it is also a distinct and separate cause of action from that of the injured spouse's claim. *Hunley v. Silver Furniture Mfg. Co.*, 38 S.W.3d 555, 557-58 (Tenn. 2001). This Court has defined consortium as follows:

> "the conjugal fellowship of husband and wife, and the right of each to the company, cooperation, affection and aid of the other in every conjugal relation" … loss of services is a part of the loss of consortium….

*Jackson v. Miller*, 776 S.W.2d 115, 116-17 (Tenn. Ct. App. 1989) (quoting *Manning v. Altec, Inc.*, 488 F.2d 127, 132 (6th Cir. 1973)).

To begin, we note that a jury verdict finding for the injured spouse but also denying a loss of consortium claim is not necessarily inconsistent because loss of consortium is "a distinct and separate cause of action from that of the injured spouse's claim." *Hunley*, 38 S.W.3d at 557-58. As loss of consortium is its own separate cause of action, it does not necessarily follow that simply because the injured spouse is found to have a legitimate claim that there then must be loss of consortium for the non-injured spouse.

Plaintiffs claim there is no material evidence to support an award of zero damages to Mr. McPeek. After our review of the record, we disagree. Plaintiffs testified that prior to the accident, Ms. McPeek did things for her husband including cooking meals and helping him get out of the bathtub. Although both Plaintiffs claimed that things were not like they were prior to the accident, Mr. McPeek admitted his wife still is able to cook meals and Ms. McPeek testified that she now cooks meals that are quick and easy rather than big meals. In addition, Ms. McPeek testified that instead of helping her husband to get out of the bathtub and to the bedroom to put on his prosthetic leg as she used to do, she now brings the prosthetic leg to the bathroom for him.

In addition, Mr. McPeek testified that prior to the accident, he and his wife had sexual relations two or three times a week, but he cannot remember the last time they had sex since the accident. However, when asked why their sex life has changed, Mr. McPeek stated: "Well, she hurts all the time - - about all the time. And I hurt, and, you know, I've developed sugar, but that really doesn't have anything to do with it. I mean, it's …." Mr. McPeek also admitted that Dr. McCoy gave his wife samples of Viagra and later wrote a prescription for him for Viagra.

The jury was free to find, and they apparently did, that Mr. McPeek has not suffered any damages. Witness credibility determination is the responsibility of the jury, and this Court will not substitute its judgment for that of the jury as to witnesses' credibility. Also, Plaintiffs admitted Ms. McPeek still is able to assist her husband, even though it may not be in exactly the same manner as she did prior to the accident. In addition, the jury was free to believe, and they apparently did, that changes in Plaintiffs' sex life, if any, were not a result of the accident.

Taking the strongest legitimate view of all the evidence in favor of the verdict, assuming the truth of all that tends to support it, allowing all reasonable inferences to sustain the verdict, and discarding all to the contrary, as we must, we find that there was material evidence to support an award of zero loss of consortium damages. We, therefore, affirm on this issue.

We next consider whether the Trial Court erred by allowing the introduction of certain medical records.

As this Court stated in *Delapp v. Pratt*:

Issues regarding admission of evidence in Tennessee are reviewed for abuse of discretion. *Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001). "[T]rial courts are accorded a wide degree of latitude in their determination of whether to

admit or exclude evidence, even if such evidence would be relevant." *Id*. Our Supreme Court discussed the abuse of discretion standard in *Eldridge v. Eldridge*, stating:

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made." A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted).

> Appellate courts ordinarily permit discretionary decisions to stand when reasonable judicial minds can differ concerning their soundness. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999). A trial court's discretionary decision must take into account applicable law and be consistent with the facts before the court. *Id*. When reviewing a discretionary decision by the trial court, the "appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision." *Id*.

*Delapp v. Pratt*, 152 S.W.3d 530, 538 (Tenn. Ct. App. 2004).

On appeal, Plaintiffs argue the Trial Court erred in admitting the records of various medical providers claiming that the fact that a record is admissible does not mean that every entry in that record is admissible and that "[d]eclarations made by physicians in records that are not evidence but are opinions must be substantiated by actual testimony." However, Plaintiffs not only did not object to the admission of the records of the medical providers during trial, but affirmatively stated they had no objection to the entry of each of these records.

As this Court stated in *Grandstaff v. Hawks*,

Objections to the introduction of evidence must be timely and specific.

* * *

A party who invites or waives error, or who fails to take reasonable steps to cure an error, is not entitled to relief on appeal. Failure to object [to] evidence in a timely and specific fashion precludes taking issue on appeal with the admission of the evidence.

*Grandstaff v. Hawks*, 36 S.W.3d 482, 488 (Tenn. Ct. App. 2000) (citations omitted).

Plaintiffs not only failed to make timely and specific objections to the introduction of the medical provider records, but affirmatively stated their lack of objection. Plaintiffs, therefore, waived any objections to the admission of these records and may not take issue on appeal with the admission of these records.

Plaintiffs did object at trial to what they characterize as "a rather unusual method of presentation" of the prescription records. Plaintiffs objected to these records claiming that under Rule 403, the records were irrelevant and that the probative value, if any, was outweighed by unfair prejudice and confusion of the issues. The Trial Court overruled the objection.

As to Plaintiffs' specific Rule 403 objection to these prescription records, we believe reasonable minds could disagree as to the propriety of the decision made by the Trial Court to admit the prescription records, the very essence of a discretionary decision. We believe this to be so given that the prescription records showing that Ms. McPeek received multiple pain medications, including Percocet and Lortab, on a regular basis during the year preceding the accident are relevant to the issues of the severity and chronic nature of Ms. McPeek's preexisting condition. We also note that it goes to Mr. McPeek's credibility regarding how many and what kind of medications Ms. McPeek was taking on a regular basis before the accident. Given this, we will not substitute our judgment for that of the Trial Court, and we find no abuse of discretion regarding the admission of the prescription records.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellants, Monica McPeek and Eldridge McPeek, and their surety.

_____
D. MICHAEL SWINEY, JUDGE

-7-