# IN THE SUPREME COURT OF TENNESSEE
January 6, 2021 Session[1]

## CYNTHIA E. YEBUAH, ET AL. V. CENTER FOR UROLOGICAL TREATMENT, PLC

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Davidson County**
**No. 14C4972  Joseph P. Binkley, Jr., Judge**

―――――――――――――――――――――

**No. M2018-01652-SC-R11-CV**

―――――――――――――――――――――

This is a healthcare liability action involving the application of the statutory cap on noneconomic damages to loss of consortium claims. The issue before the Court is whether the statutory cap on noneconomic damages applies separately to a spouse's loss of consortium claim pursuant to Tennessee Code Annotated section 29-39-102, thus allowing each plaintiff to receive an award of up to $750,000 in noneconomic damages. Here, the surgery patient filed suit for noneconomic damages resulting from the defendant physicians' negligence, namely that a portion of a Gelport device was unintentionally left in her body after surgery. In the same suit, the patient's spouse claimed damages for loss of consortium. The jury awarded the patient $4,000,000 in damages for pain and suffering and loss of enjoyment of life. The jury also awarded her husband $500,000 in damages for loss of consortium. The trial court initially applied the statutory cap on noneconomic damages by entering a judgment in favor of both plaintiffs collectively for a total judgment of $750,000. However, the trial court subsequently granted the plaintiffs' motion to alter or amend and applied the statutory cap to each plaintiff separately, thereby entering a judgment of $750,000 for the patient and $500,000 for her husband. The Court of Appeals affirmed. We hold that the language of Tennessee Code Annotated section 29-39-102 allows both plaintiffs to recover only $750,000 in the aggregate for noneconomic damages. We therefore reverse the holding of the Court of Appeals and the trial court.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed in Part

ROGER A. PAGE, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and HOLLY KIRBY, J., joined. SHARON G. LEE, J., filed a dissenting opinion in which CORNELIA A. CLARK, J., joined.

―――――――――――――――――

[1] We heard oral argument through videoconference under this Court's emergency orders restricting court proceedings because of the COVID-19 pandemic.

Marty R. Phillips, Dale Conder, Jr., and Craig P. Sanders, Jackson, Tennessee, and Wendy L. Longmire and T. William A. Caldwell, Nashville, Tennessee, for the appellant, Center for Urological Treatment, PLC.

Randall L. Kinnard, Mary Ellen Morris, Donald Capparella, Tyler Chance Yarbro, and Kimberly Macdonald, Nashville, Tennessee, for the appellees, Cynthia E. Yebuah and Eric N. Yebuah.

Herbert H. Slatery III, Attorney General and Reporter, Andrée Sophia Blumstein, Solicitor General, and Joseph P. Ahillen, Assistant Attorney General, for the appellant/intervenor, State of Tennessee.

W. Bryan Smith, Memphis, Tennessee, and Brian G. Brooks, Greenbrier, Arkansas, for amicus curiae, Tennessee Trial Lawyers Association.

**OPINION**

### I. FACTUAL & PROCEDURAL BACKGROUND

This appeal concerns a jury award of noneconomic damages after part of a Gelport device was left inside a surgery patient. The underlying facts of the case are largely undisputed. In March 2005, Dr. Frank Lohrasbi performed surgery on Cynthia Yebuah to remove her left kidney after a CT scan revealed the kidney contained a potentially malignant mass. It was a laparoscopic procedure, which was performed with the assistance of a Gelport device. Mrs. Yebuah recovered from surgery routinely.

Over the next couple of years, Mrs. Yebuah underwent several CT scans to detect whether the cancer had returned. In July 2005, Dr. Edward Priest, a radiologist, interpreted Mrs. Yebuah's CT scan as showing no sign of cancer. Dr. Lohrasbi reviewed Dr. Priest's report and passed the information along to Mrs. Yebuah. In February 2006 and in February 2007, Mrs. Yebuah's radiology reports again found no sign of cancer, but both reports noted there was a "tubular structure" in her abdominal cavity—a structure that was not mentioned in the July 2005 report. Dr. Lohrasbi informed Mrs. Yebuah that the CT scans showed no sign of cancer but did not mention the tubular structure.

In 2012, Mrs. Yebuah notified her doctor that she was experiencing abdominal pain and was referred to Dr. Leonardo Espinel for possible gallbladder disease. In July 2013, Dr. Espinel performed a laparoscopic procedure to remove Mrs. Yebuah's gallbladder. During this surgery, Dr. Espinel discovered a foreign cylindrical object inside her abdominal cavity.

Dr. Espinel did not attempt to remove the object at that time but informed Mrs. Yebuah that her small bowel was looped around a fourteen-centimeter ring. It was later determined that during the March 2005 laparoscopic surgery to remove her kidney, a portion of a Gelport device was unintentionally left inside Mrs. Yebuah's abdomen. Thus, the foreign object remained inside Mrs. Yebuah's body for eight years before it was discovered during an unrelated surgery to remove her gallbladder.

On November 4, 2013, Mrs. Yebuah underwent surgery to remove the fourteen-centimeter ring from her abdominal cavity. She returned to work shortly thereafter.

In November 2014, the Yebuahs filed a complaint in the Circuit Court for Davidson County, Tennessee, seeking damages against Dr. Lohrasbi, Dr. Priest, and their employers, chiefly the Center for Urological Treatment, PLC (the "Center") and Radiology Alliance, P.C. The Yebuahs alleged that Dr. Lohrasbi negligently left a portion of the Gelport device in Mrs. Yebuah's abdominal cavity, negligently failed to inform Mrs. Yebuah of the ring's presence, and negligently failed to remove the ring once it was discovered. The Yebuahs further alleged that Dr. Priest negligently failed to identify the foreign object after Mrs. Yebuah's initial CT scan. Mrs. Yebuah did not claim any permanent injury related to the Gelport device but instead sought recovery for noneconomic damages. Her husband, Eric Yebuah, likewise sought recovery for noneconomic damages in the form of loss of consortium. The individual doctors were later voluntarily dismissed, and the Yebuahs only pursued vicarious liability claims against the employers.

The case against the Center and Radiology Alliance went to trial in February of 2018. Because the remaining defendants admitted fault, the case was presented to the jury solely on the issues of causation and damages. The trial court entered a directed verdict in favor of Radiology Alliance at the conclusion of the proof. Thus, only the case against the Center went to the jury, which returned a verdict against the Center and awarded Mrs. Yebuah $2,000,000 for pain and suffering plus $2,000,000 for loss of enjoyment of life. In addition, the jury awarded Mr. Yebuah $500,000 for loss of consortium.

After trial, the Center and the Yebuahs submitted competing proposed judgments to the trial court. The Yebuahs' proposed order included a judgment for the total jury award of $4,500,000. In contrast, the Center submitted a competing order that applied the statutory noneconomic damages cap, which is codified at Tennessee Code Annotated section 29-39-102. More specifically, the Center's proposed judgment reduced the total damage award for both Mr. and Mrs. Yebuah to $750,000.

The trial court ultimately adopted the Center's proposed judgment. The Yebuahs filed a motion to alter or amend the judgment, arguing that the statutory cap was unconstitutional and, alternatively, that the trial court had incorrectly applied the statutory cap. According to the Yebuahs, the trial court should have interpreted the statute to apply

the damages cap separately to each plaintiff's award. Meanwhile, the Center filed a motion for a new trial or a remittitur.

The trial court denied the Center's motion but granted, in part, the Yebuahs' motion to amend the judgment. It determined that the Yebuahs waived their constitutional challenge to Tennessee Code Annotated section 29-39-102 by failing to raise the issue before or during trial. However, the trial court agreed with the Yebuahs' interpretation of the statutory language in section 29-39-102 and determined that the statutory $750,000 cap on noneconomic damages should apply separately to each plaintiff's damages award. Therefore, the trial court entered an order amending its original judgment to a judgment of $750,000 in favor of Mrs. Yebuah and a judgment of $500,000 in favor of Mr. Yebuah—for a total of $1,250,000.

In considering the issues on appeal, the Court of Appeals concluded that the trial court erred in determining that the Yebuahs had waived their challenge to the constitutionality of the statutory cap. *Yebuah v. Ctr. for Urological Treatment, PLC*, No. M2018-01652-COA-R3-CV, 2020 WL 2781586, at *4 (Tenn. Ct. App. May 28, 2020), *perm. app. granted*, (Tenn. Oct. 8, 2020). However, the Court of Appeals explained that this Court's recent decision in *McClay v. Airport Management Services, LLC*, 596 S.W.3d 686 (Tenn. 2020), resolved the majority of the Yebuahs' constitutional claims. *Yebuah*, 2020 WL 2781586, at *4. The intermediate appellate court further determined the trial court properly interpreted and applied Tennessee Code Annotated section 29-39-102. *See id.* at *5-7. Therefore, the Court of Appeals affirmed the trial court's judgment. *Id.* at *10.

We granted the ensuing application for permission to appeal to address whether the statutory cap on noneconomic damages applies separately to a spouse's loss of consortium claim.

## II. STANDARD OF REVIEW

The issue presented for review concerns statutory construction. Statutory construction presents a question of law, and we review such questions de novo with no presumption of correctness. *State v. Dycus*, 456 S.W.3d 918, 924 (Tenn. 2015) (citing *State v. Springer*, 406 S.W.3d 526, 532-33 (Tenn. 2013); *State v. Marshall*, 319 S.W.3d 558, 561 (Tenn. 2010); *State v. Wilson*, 132 S.W.3d 340, 341 (Tenn. 2004)); *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009).

When engaging in statutory interpretation, "well-defined precepts" apply. *State v. Frazier*, 558 S.W.3d 145, 152 (Tenn. 2018) (quoting *Tenn. Dep't of Corr. v. Pressley*, 528 S.W.3d 506, 512 (Tenn. 2017)); *State v. Howard*, 504 S.W.3d 260, 269 (Tenn. 2016) (quoting *State v. McNack*, 356 S.W.3d 906, 908 (Tenn. 2011)). "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without

unduly restricting or expanding a statute's coverage beyond its intended scope." *Howard*, 504 S.W.3d at 269 (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)); *see Carter*, 279 S.W.3d at 564 (citing *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008)). In construing statutes, Tennessee law provides that courts are to avoid a construction that leads to absurd results. *Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 872 (Tenn. 2016) (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010)). "Furthermore, the 'common law is not displaced by a legislative enactment, except to the extent required by the statute itself.'" *Wlodarz v. State*, 361 S.W.3d 490, 496 (Tenn. 2012) (quoting *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 679 (Tenn. 2002)), *abrogated on other grounds by Frazier v. State*, 495 S.W.3d 246 (Tenn. 2016).

We look to "the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment." *Spires v. Simpson*, 539 S.W.3d 134, 143 (Tenn. 2017) (quoting *State v. Collins*, 166 S.W.3d 721, 726 (Tenn. 2005)). Courts seek a reasonable interpretation "in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *Beard v. Branson*, 528 S.W.3d 487, 496 (Tenn. 2017) (quoting *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001)). The words in a statute "must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 839 (Tenn. 2019) (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)).

### III. ANALYSIS

The issue on appeal to this Court is whether Tennessee Code Annotated section 29-39-102 provides that a spouse's loss of consortium claim is subject to the same cap on noneconomic damages as the injured spouse, or whether a separate cap applies to each spouse. The statute states, in pertinent part:

(a) In a civil action, each injured plaintiff may be awarded:

(1) Compensation for economic damages suffered by each injured plaintiff; and

(2) Compensation for any noneconomic damages suffered by each injured plaintiff not to exceed seven hundred fifty thousand dollars ($750,000) for all injuries and occurrences that were or could have been asserted, regardless of whether the act is based on a single act or omission or on a series of acts or omissions that allegedly caused the injuries or death.

. . . .

(e) All noneconomic damages awarded to each injured plaintiff, including damages for pain and suffering, as well as any claims of a spouse or children for loss of consortium or any derivative claim for noneconomic damages, shall not exceed in the aggregate a total of seven hundred fifty thousand dollars ($750,000), unless subsection (c) applies, in which case the aggregate amount shall not exceed one million dollars ($1,000,000).

Tenn. Code Ann. § 29-39-102 (2012). The Yebuahs assert that the Court of Appeals properly concluded that "[t]he repeated phrase 'each injured plaintiff' tells us that the legislature chose to impose a 'per plaintiff' limit on noneconomic damages.'" *See Yebuah*, 2020 WL 2781586, at *6. In contrast, the Center argues that the language of subsection 29-39-102(e) provides a single $750,000 cap on both Mrs. and Mr. Yebuah's claims for noneconomic damages.

As set forth above, the first rule of statutory interpretation is to effectuate legislative intent. *Beard*, 528 S.W.3d at 496. In so doing, "[t]he text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Mills*, 360 S.W.3d at 368 (citing *Lee Med.*, 312 S.W.3d at 528; *Hayes v. Gibson Cnty.*, 288 S.W.3d 334, 337 (Tenn. 2009); *Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d 173, 176 (Tenn. 2008)). We must, therefore, begin our inquiry by looking at the text of the statute.

The parties to this appeal assert that the phrase "each injured plaintiff" is important to understanding the legislature's intent in this matter. The Yebuahs' interpretation does not distinguish between "plaintiffs" and "injured plaintiffs." It does not consider the difference between a plaintiff with a personal injury and a plaintiff with a derivative claim, such as one for loss of consortium. We agree with the Center that the phrase "each injured plaintiff" is not synonymous with "each plaintiff." Otherwise, the word "injured" would be unnecessary, and "a legislature is presumed to have used no superfluous words." *In re Hogue*, 286 S.W.3d 890, 896 (Tenn. 2009) (quoting *Platt v. Union Pac. R.R. Co.*, 99 U.S. 48, 58 (1878)). This canon of statutory interpretation prevents any word from being "inoperative, superfluous, void, or insignificant." *Young v. Frist Cardiology, PLLC*, 599 S.W.3d 568, 571 (Tenn. 2020) (quoting *City of Caryville v. Campbell Cnty.*, 550 S.W.2d 510, 512 (Tenn. Ct. App. 1983)); *see also Baker v. State*, 417 S.W.3d 428, 439 n.11 (Tenn. 2013).

The Yebuahs further assert that the concept of an "uninjured spouse" is in derogation of the common law. However, there are several other examples in Tennessee law of the distinction between an "injured plaintiff" and a spouse with a loss of consortium claim. *See Ki v. State*, 78 S.W.3d 876, 880 (Tenn. 2002) ("[I]n a spousal injury action two

- 6 -

'claimants' may exist because the non-injured spouse may maintain a separate cause of action or claim for loss of consortium pursuant to statute."); *see also Hunley v. Silver Furniture Mfg. Co.*, 38 S.W.3d 555, 557 (Tenn. 2001) ("Loss of consortium is 'a separate claim from that of an injured spouse.'" (quoting *Tuggle v. Allright Parking Sys., Inc.*, 922 S.W.2d 105, 108 (Tenn. 1996))); *Jackson v. Miller*, 776 S.W.2d 115, 117 (Tenn. Ct. App. 1989) ("Despite being a separate claim from that of an injured spouse for other damages, loss of consortium is also a derivative claim in that the physical injuries or incapacities of one's spouse give rise to and establish the claim."); *McPeek v. Lockhart*, 174 S.W.3d 751, 755 (Tenn. Ct. App. 2005) ("[I]t does not necessarily follow that simply because the injured spouse is found to have a legitimate claim that there then must be loss of consortium for the non-injured spouse."). Courts must presume that the legislature knew of this distinction at the time it enacted Tennessee Code Annotated section 29-39-102 using the "each injured plaintiff" language.

Consistent with this authority, the Tennessee Pattern Jury Instructions make a similar distinction between the "injured spouse" and the "other spouse." Instruction 14.20 instructs a judge to charge a jury as follows: "If, in accordance with these instructions, you are to determine damages for the plaintiff (injured spouse) you should also determine damages for the plaintiff (other spouse)." *Personal Injury—Spouse*, 8 Tenn. Prac. Pattern Jury Instr., T.P.I.-Civil 14.20 (20th ed. 2020).[2]

The Yebuahs also argue that distinguishing between the spouse with the physical injury and the spouse with the loss of consortium claim somehow gives loss of consortium claimants less than full plaintiff status. We disagree. A loss of consortium claim is clearly a separate injury and cause of action. *Hunley*, 38 S.W.3d at 557. But for purposes of clarity in cases such as this—where Mrs. Yebuah suffered medical negligence and Mr. Yebuah did not—it is helpful to distinguish between the plaintiffs by using the word "injured" to modify "plaintiff" when discussing the party with the primary cause of action. A loss of consortium claim is a derivative claim, and recovery is dependent on the spouse's recovery. *See Tuggle*, 922 S.W.2d at 109 ("[T]here must be a tort which gives rise to a cause of action that must be maintained by the [physically] injured spouse in order for the non-injured spouse to claim a loss of consortium. In other words, the loss of consortium claim is dependent upon the negligent injury of the other spouse who has the primary tort cause of action." (alterations in original) (quoting *Mist v. Westin Hotels, Inc.*, 738 P.2d 85, 90 (Haw. 1987))). In a situation in which the damages are capped, the consortium spouse does not "lose" his or her claim as is suggested by the Yebuahs. Their damages are simply limited. Indeed, "one could view the statutory cap on noneconomic damages as a limitation on the

---

[2] We recognize that Tennessee's Pattern Jury Instructions are "merely patterns or suggestions" without the force of law. *See State v. Hodges*, 944 S.W.2d 346, 354 (Tenn. 1997). They are, however, drafted by the Committee on Pattern Jury Instructions of the Tennessee Judicial Conference, which is comprised of learned judges from across the state of Tennessee who endeavor to reflect the current state of Tennessee law.

available remedy . . . or as an abrogation of causes of action for claims exceeding the statutory limit." *McClay*, 596 S.W.3d at 691. "Under either view, the General Assembly was within its legislative authority to . . . enact[] the statutory cap on noneconomic damages." *Id.*

The Yebuahs' and the Court of Appeals' interpretation also renders subsection (e) superfluous. According to the Court of Appeals, subsection (e) limits an injured plaintiff's recovery to $750,000 "[w]hen one injured plaintiff seeks compensation for both personal injuries and loss of consortium." *Yebuah*, 2020 WL 2781586, at *7. But this conclusion is undercut by the fact that the legislature already defined the phrase "noneconomic damages" to include "loss of society, companionship, and consortium." Tenn. Code Ann. § 29-39-101(2) (2011). Moreover, Tennessee Code Annotated section 29-39-102(a)(2) applies to cap a plaintiff seeking damages for both personal injuries and loss of consortium. Subsection (e) must therefore speak to something different so as not to be rendered redundant and superfluous, particularly as it refers to "any claims of a spouse or children for loss of consortium or any derivative claim for noneconomic damages."

Further evidence of the legislature's intent is found in the words "in the aggregate." The crucial language here is that "[a]ll noneconomic damages awarded to each injured plaintiff . . . as well as any claims of a spouse . . . for loss of consortium or any derivative claim for noneconomic damages, shall not exceed *in the aggregate* a total of [$750,000]*." Id.* § 29-39-102(e) (emphasis added). "Aggregate" is defined as "formed by the collection of units or particles into a body, mass, or amount: collective: such as . . . taking all units as a whole." *Aggregate*, Merriam-Webster, https://www.merriam webster.com/dictionary/aggregate (last visited May 20, 2021). The collection of units to be taken as a whole in this case are the total damages awarded for noneconomic losses. The noneconomic damages to Mrs. Yebuah as the injured plaintiff, as well as the noneconomic damages awarded to Mr. Yebuah for his derivative loss of consortium claim, may not, "in the aggregate," exceed a single cap of $750,000.

The Yebuahs also claim that the language of the Tennessee Governmental Tort Liability Act ("GTLA") supports their reading of the noneconomic damages cap statute, specifically that a plaintiff bringing a claim for loss of consortium is not limited by the damages cap applicable to his or her spouse. *See Swafford v. City of Chattanooga*, 743 S.W.2d 174, 178-79 (Tenn. Ct. App. 1987) (holding that a wife could recover for loss of consortium even though her husband had exhausted the liability limit under the GTLA); *Hunt v. Fayette Cnty. Bd. of Educ.*, 1990 WL 62834, at *4 (Tenn. Ct. App. May 16, 1990) (same). We do not find the statutory language in the GTLA to be helpful in interpreting the statute at issue in this case. The definitions are codified in Tennessee Code Annotated section 29-20-102 for purposes of that particular chapter, which addresses the issue of removing sovereign immunity, thus defining an "injury" broadly. The cap for bodily injury

or death under the GTLA is for each person—not "each injured plaintiff." They are simply different statutes, enacted for different purposes, using different language.

The Yebuahs further assert policy reasons in favor of their reading of the statute. They argue that the Center's interpretation is problematic because the statutory language does not set forth a manner by which to allocate reduced damages. According to the Yebuahs, allowing only one cap on noneconomic damages between Mrs. and Mr. Yebuah has the potential to create marital discord between spouses over how they should share damages awarded under a single cap—which they assert is contrary to the public policy of fostering marital harmony. However, a loss of consortium award presupposes the existence of an intact marital relationship. *See Tuggle*, 922 S.W.2d at 109 (noting that the basis for recovery of loss of consortium is an "interference with the continuance of a healthy and happy marital life and injury to the conjugal relation"). Moreover, it does not matter whether this Court believes the statute to be wise or artfully written—our duty is simply to interpret the statute. *See Lavin v. Jordon*, 16 S.W.3d 362, 369 (Tenn. 2000) (noting that generally the "wisdom" of enacting a particular statute "lies solely with the Legislature and is not the concern of the Court." (quoting *Hoover Motor Express Co. v. Hammer*, 298 S.W.2d 724, 726 (Tenn. 1957))).

Courts in other states have concluded that a single cap applies when considering similar statutes. Michigan's products liability statute states that "the total amount of damages for noneconomic loss shall not exceed $280,000.00." Mich. Comp. Laws Ann. § 600.2946a(1) (Westlaw through 2021 Mich. Pub. Acts, No. 13). In addressing an issue of first impression, the Michigan Court of Appeals determined that the language of the statute at issue limited the products liability claim and derivative loss of consortium claim to a single cap on noneconomic damages awarded in products liability cases. *See Wessels v. Garden Way, Inc.*, 689 N.W.2d 526, 528 (Mich. Ct. App. 2004). The court came to this conclusion because, first, the word "total" in the statute means "the total amount; sum; aggregate." *Id.* at 530 (quoting *Total*, Webster's College Dictionary (Random House rev. ed. 1988)). Second, the term "noneconomic loss" was defined by the Michigan legislature as including claims for "loss of consortium." *Id.* at 531 (quoting Mich. Comp. Laws § 600.2945(f)). Both the use of the word "total" and the definition of "noneconomic loss" bear striking resemblance to the Tennessee statute at issue in this case.

In Maryland, a van passenger who was injured in an automobile accident and her husband brought suit for negligence against the vehicle's driver and his employer. *Oaks v. Connors,* 660 A.2d 423, 425 (Md. 1995). The plaintiffs' claims included damages for the wife's personal injuries and damages to the couple's marriage. *Id.* Like Tennessee, the Maryland statute includes "loss of consortium" in the definition of "noneconomic loss." *See* Md. Code Ann., Cts. & Jud. Proc. § 11-108(a)(2)(i)(2) (West, Westlaw through 2020–2021 Legis. Sess.). The Maryland Court of Appeals explained that "Maryland's cap on noneconomic damages is codified as [section] 11-108; it provides that '[i]n any action for

damages for personal injury. . . , an award for noneconomic damages may not exceed $350,000. . . . 'Noneconomic damages' means pain, suffering, inconvenience, physical impairment, disfigurement, loss of consortium, or other nonpecuniary injury.'" *Oaks*, 660 A.2d at 428 (second alteration in original). The court determined that "[t]he plain meaning of this provision is that damages for loss of consortium should be governed by the same $350,000 limit as the other items enumerated" in the statute. *Id.* at 429. These cases offer additional support for the conclusion that the statutory cap on noneconomic damages does not apply separately to a spouse's loss of consortium claim.

As a final note, we acknowledge that the Tennessee Attorney General filed an intervening brief on appeal before this Court as he did before the Court of Appeals. During the trial court proceedings, the Yebuahs served the Attorney General with a copy of a proposed amended complaint in which the Yebuahs notified the Attorney General of their intention to allege that the statutory cap on noneconomic damages was unconstitutional. However, the Yebuahs ultimately did not include the constitutional issues in their amended complaint.

As stated above, the trial court determined that the Yebuahs had waived their constitutional challenge to the statute at issue. The Court of Appeals, however, disagreed and elected to review the constitutional issues raised before it, including due process, the right to trial by jury, separation of powers, the equal protection clause, and the takings doctrine. *See Yebuah*, 2020 WL 2781586, at *4. After considering the issues, the Court of Appeals determined that the statute was constitutional. *Id.* at *5-6. The Court of Appeals properly noted that it was bound by this Court's recent decision in *McClay v. Airport Management Services, LLC*, which resolved most of the constitutional issues presented. *See* 596 S.W.3d at 696 (holding "that the statutory cap on noneconomic damages in Tennessee Code Annotated section 29-39-102 does not violate the right to trial by jury, the doctrine of separation of powers, or the equal protection provisions of the Tennessee Constitution.").

In their brief before this Court, the Yebuahs very briefly touch on "a due process issue" and a "potential[] . . . violation of the Takings Doctrine." However, these issues were not mentioned in their response to the Center's application for permission to appeal. *See State v. Bishop*, 431 S.W.3d 22, 43 (Tenn. 2014) (stating that to preserve an issue for review by this Court, "the issue must be . . . properly raised in the Tenn. R. App. P. 11 application for permission to appeal or in the answer to the Tenn. R. App. P. 11 application."). Regardless, in their brief they merely mention potential "constitutional problems" without properly explaining or giving adequate legal support for such claims. *See Sneed v. Bd. of Pro. Resp.*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."). Thus, we deem these issues to be waived.

## IV. CONCLUSION

For the reasons set forth herein, we hold that Tennessee Code Annotated section 29-39-102 creates a single cap on noneconomic damages that includes those awarded to the primary injured spouse as well as those awarded to the other spouse for a derivative loss of consortium claim. We therefore reverse the holding of the Court of Appeals and the trial court and reduce the total judgment for noneconomic damages in this case to $750,000. Costs on appeal are assessed to Appellees Cynthia Yebuah and Eric Yebuah, for which execution may issue if necessary.

_____
ROGER A. PAGE, JUSTICE